955 So.2d 934 (2007)
Jody OTTS and Amanda Otts, Appellants
v.
Donna LYNN, Individually and d/b/a Southern Foundations, Appellee.
No. 2005-CA-01876-COA.
Court of Appeals of Mississippi.
May 1, 2007.
*936 John C. Jopling, David C. Owen, Columbus, William Charles Cunningham, for appellants.
John R. White, for appellee.
*937 Before MYERS, P.J., CHANDLER and ROBERTS, JJ.
CHANDLER, J., for the Court.
¶ 1. Jody and Amanda Otts sued Donna Lynn personally and d/b/a Southern Foundations for the paralysis Jody sustained when he was shot on Lynn's premises in Columbus, Mississippi. During an altercation with his sister, Lisa Otts, Jody was shot, paralyzing him from the waist down. Jody sued Donna Lynn, Lisa's girlfriend and alleged employer, claiming theories of premises liability, vicarious liability and negligence. The trial court granted summary judgment in favor of Donna Lynn, finding no genuine issues of material facts. Aggrieved, the Otts appeal, arguing:
I. WHETHER SUMMARY JUDGMENT WAS PROPER IF FACTS WERE CONTESTED.
II. WHETHER THE LOWER COURT FAILED TO APPLY THE APPROPRIATE STANDARD OF REVIEW FOR SUMMARY JUDGMENT.
III. WHETHER THE LOWER COURT ERRED IN GRANTING SUMMARY JUDGMENT WHERE THE APPELLEE'S MOTION FAILED TO COMPLY WITH THE UNIFORM CIRCUIT AND COUNTY COURT RULES.
¶ 2. Finding no error, we affirm.

FACTS
¶ 3. Jody Otts, an independent contractor, and his wife, Amanda, filed suit against Jody's sister, Lisa Otts, her girlfriend, Donna Lynn, and Lynn's company, Southern Foundations. Jody was paralyzed as a result of an altercation with Lisa on February 7, 1997, in which he was shot with a gun owned by Lynn.
¶ 4. Jody worked occasionally as a carpenter and independent contractor for Lynn. He had a history of drug and alcohol abuse. Approximately two days before the altercation in question, Lynn severed their working relationship when another worker reported that Jody had driven the company truck while under the influence of pills, marijuana and alcohol. Although Lynn fired Jody from his position as an independent contractor with her company, she allowed him to take over a former Southern Foundations' job building a carport, which was to be completed the next day on February 6, 1997.
¶ 5. On the night in question, Lynn and Lisa drove to Jody's house around 8:00 p.m. to retrieve the company truck that Jody had been using. At the time, Jody was not at home and had left the truck in his driveway. Jody had also left his tools in the truck. Lynn took the company truck back to her own home. After drinking at a bar for several hours, Jody went to Lynn's house sometime after midnight to retrieve his tools and ask for payment for the carport job. Amanda drove him because he had been drinking. Their young children also went along for the ride, because the couple did not want to leave them at home alone.
¶ 6. When Jody arrived at Lynn's home, Lisa was asleep and Lynn answered the door. Jody was upset and Lynn invited Amanda and him in to talk. Lynn testified at trial that Jody announced "it would take the law to get him out" and that she might as well call them. As Lynn and Jody were talking, Lisa awoke and entered the room. Lisa and Jody began arguing, and Amanda went back outside to the truck to check on the children. Lisa and Lynn both stated that they repeatedly told Jody to leave. When Lisa and Jody began exchanging physical blows, Lynn went into her office located in one of the home's bedrooms and called 911.
*938 ¶ 7. At some point in the argument, Lisa retreated to Lynn's bedroom and took Lynn's pistol from a bedside table. Lisa stated that she retrieved the gun, because she was in fear for her life after Jody had physically thrown her over furniture and ripped her clothing. Lisa went back into the room with Jody, holding the gun at her side. The two resumed their argument and Jody discovered the gun. Jody and Lisa began to wrestle for the gun. After a struggle, the gun went off, striking Jody and paralyzing him. Jody claims Lisa shot him accidentally. Lisa maintains that Jody shot himself.
¶ 8. The Otts sued Lisa, Lynn and Lynn's company, Southern Foundations, claiming issues of vicarious liability, premises liability and negligent maintenance of a firearm. Lynn, individually and d/b/a Southern Foundations, requested and was granted a summary judgment in her favor. The Otts requested a certification of final judgment against Lynn pursuant to Rule 54(c) of the Mississippi Rules of Civil Procedure, which was also granted.
¶ 9. The Otts appeal, arguing that summary judgment was improper because issues of material fact existed regarding Jody's claims for premises liability, vicarious liability, and negligence. They claim that a jury should have been able to decide whether: (1) Jody was a licensee or invitee at the time of the shooting on Lynn's property (which would support his premises liability claim), (2) Lisa was an employee of Southern Foundations (which would support his vicarious liability claim), and whether (3) Lynn negligently kept a loaded gun on her property which was used in the shooting.
¶ 10. The Otts further maintain that the circuit court applied an incorrect standard for summary judgment, because the court's order only found that no genuine issues of material fact existed, and did not address the second requirement that Lynn was entitled to a judgment as a matter of law. They argue that the circuit court did not view the facts in favor of the nonmovant (the Otts), and that Lynn did not comply with the mandatory requirements of the Uniform Rules of Circuit and County Court because she did not itemize the facts alleged to be undisputed in her motion for summary judgment.

STANDARD OF REVIEW
¶ 11. This Court reviews the record de novo to determine whether a motion for summary judgment was properly granted. Lowery v. Guaranty Bank and Trust Co., 592 So.2d 79, 81 (Miss.1991). A motion for summary judgment should be granted if it can be shown by the evidence that no genuine issue of material fact exists and that the moving party is entitled to a judgment as a matter of law. M.R.C.P. 56(c). On a motion for summary judgment, a court does not try issues of fact; it can only determine whether there are issues to be tried. Hartford Cas. Ins. Co. v. Halliburton Co., 826 So.2d 1206, 1209-10(¶ 6) (Miss.2001). All evidence must be viewed in the light most favorable to the non-movant, and the court should presume that all evidence in the non-movant's favor is true. Daniels v. GNB, Inc., 629 So.2d 595, 599 (Miss.1993).

LAW AND ANALYSIS
I. WHETHER SUMMARY JUDGMENT WAS PROPER IF FACTS WERE CONTESTED.
¶ 12. Mississippi Rule of Civil Procedure 56(c) states in pertinent part, "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a *939 judgment as a matter of law," summary judgment shall be entered.
¶ 13. The essential facts of this case are not disputed. The parties agree that Jody went to Lynn's home sometime after midnight after drinking for several hours at a bar. After he entered Lynn's home, Lisa awoke. Lisa and Jody argued and began physically fighting. Lisa retrieved a gun from the bedroom, there was a struggle, and Jody was shot. Lynn was not present in the room where the shooting occurred because she was in another room calling 911.
¶ 14. The presence of fact issues in the record does not per se entitle a party to avoid summary judgment. "The court must be convinced that the factual issue is a material one, one that matters in an outcome determinative sense . . . the existence of a hundred contested issues of fact will not thwart summary judgment where there is no genuine dispute regarding the material issues of fact." Simmons v. Thompson Mach. of Miss., Inc., 631 So.2d 798, 801 (Miss.1994) (citing Shaw v. Burchfield, 481 So.2d 247, 252 (Miss. 1985)).
A. Premises Liability
¶ 15. The Otts argue that a genuine issue of material fact surrounds the question of Jody's status when he was entangled in the altercation with his sister. According to Leffler v. Sharp, 891 So.2d 152, 156(¶ 10) (Miss.2005), the "determination of which status [licensee, invitee, trespasser] a particular plaintiff holds can be a jury question, but where facts are not in dispute, the classification becomes a question of law for the trial judge."
¶ 16. Mississippi uses a three-step approach to determine premises liability. Massey v. Tingle, 867 So.2d 235, 239(¶ 12) (Miss.2004). First, we must classify the status of the injured person as an invitee, licensee, or a trespasser. Id. Second, we determine the duty, if any, owed to the injured party, and then whether the duty was breached by the landowner or business operator. Id.
¶ 17. Jody argues that he was a business invitee because he went to Lynn's house that night to receive payment for work he had completed for Lynn. Lynn argues that Jody was a licensee because he entered her property merely for his own benefit or, in the alternative, she claims that Jody became a trespasser because he was told repeatedly to leave the house once he and Lisa began to argue.
¶ 18. An invitee is "a person who goes upon the premises of another in answer to the express or implied invitation of the owner or occupant for their mutual advantage." Corley v. Evans, 835 So.2d 30, 37(¶ 21) (Miss.2003). A business invitee is "invited to enter or remain on the land for a purpose directly or indirectly connected with business dealings with the possessor of the land." Clark v. Moore Mem'l United Methodist Church, 538 So.2d 760, 763 (Miss.1989). A licensee is one who "enters upon the property of another for his own convenience, pleasure, or benefit pursuant to the license or implied permission of the owner," and a trespasser is one who "enters upon another's premises without license, invitation, or other right." Corley, 835 So.2d at 37(¶ 21). Our supreme court has further held that a trespasser enters another's property "merely for his own purposes, pleasure, or convenience, or out of curiosity, and without any enticement, allurement, inducement or express or implied assurance of safety from the owner or person in charge." Titus v. Williams, 844 So.2d 459, 467(¶ 31) (Miss.2003).
*940 ¶ 19. In order to create the status of an invitee, there must be a mutual advantage between the landowner and the invitee. Corley, 835 So.2d at 37(¶ 22). Jody testified that he went to Lynn's home in the middle of the night to retrieve his tools and receive payment for his work on the carport. Lynn asserts that she allowed Jody to enter the home merely to ascertain what was wrong because she could tell that Jody was upset. We find nothing in the record to indicate that Lynn received a mutual benefit from Jody. Jody's work on the carport was not associated with Southern Foundations; it was a separate contracting job from that of his prior work with Southern Foundations. It appears that Lynn was merely doing Jody a favor by allowing him to take over the carport job so that he would have some income until he could find additional work. As such, we cannot say that Jody was an invitee or a business invitee. Therefore, we must next evaluate whether Jody was a licensee or a trespasser. When Jody was initially invited into Lynn's home, he was a licensee. Yet once Lisa and Lynn told Jody to leave the premises, he could have been considered a trespasser. Lisa and Lynn both testified that they told Jody to leave; Jody disputes this.
¶ 20. Regardless of Jody's status, Lynn did not breach any duty owed to him. In Mississippi, the highest standard of care owed to anyone who enters another's land is to keep the premises reasonably safe and when not reasonably safe, to warn only when there is hidden danger or peril that is not plain and in open view. Titus, 844 So.2d at 467(¶ 33). Once the injured person observes and fully appreciates that peril, the duty to warn disappears. Id. Although licensees and trespassers are different classifications, "landowners owe licensees and trespassers the same duty, specifically, to refrain from willfully or wantonly injuring them." Massey v. Tingle, 867 So.2d at 239(¶ 14) (Miss.2004).
¶ 21. As noted above, we find that Jody's status is irrelevant because Lynn owed no duty to warn him of a situation which he created himself. Jody went to Lynn's home in the middle of the night after he had been drinking. When he entered the home, Lynn testified that Jody exclaimed "it would take the law to get him out," and she should go ahead and call the police. When Lisa awoke and entered the room, Jody began arguing with his sister and they subsequently exchanged physical blows. The testimony is uncontroverted that both Jody and Lisa struck one another. At some point during the altercation, Jody witnessed Lisa retreat into Lynn's bedroom and when she returned, Lisa was holding a pistol at her side. A struggle ensued, whereby the gun was discharged.
¶ 22. We find no evidence in the record to support an allegation that Lynn either failed to keep the premises reasonably safe, failed to warn Jody of a hidden danger or failed to refrain from willfully and wantonly injuring Jody. Thus, this argument is without merit.
B. Vicarious Liability
¶ 23. The Otts next maintain that because Lisa was an employee of Southern Foundations, Lynn should be held vicariously liable for Lisa's actions. Lynn counters that at the time of Jody's injuries, Lisa was not acting as an employee of Southern Foundations. Thus, even if Lisa could be characterized as an employee of Southern Foundations, her actions would have been outside the scope of her employment.
¶ 24. Under the doctrine of respondeat superior, an employer may be liable for the acts of his employee if said *941 acts are done in the course of employment and in furtherance of the employer's business. Children's Med. Group, P.A. v. Phillips, 940 So.2d 931, 935(¶ 13) (Miss. 2006) (citing Sandifer Oil Co. v. Dew, 220 Miss. 609, 630, 71 So.2d 752, 758 (1954)). However, if an employee deviates from that work or goes on a "frolic" of his own, then the employer-employee relationship is temporarily suspended. Id.
¶ 25. Southern Foundations was in the business of remodeling homes. Lisa occasionally helped with bookkeeping and visiting work sites to ensure the work was being performed. The altercation between Lisa and Jody occurred after midnight, well after any arguable normal working hours could be maintained. The argument escalated, in part, because Lisa was upset that her brother had been drinking and smoking marijuana on a job site. There is no evidence in the record to prove that Lisa was acting in the course of her arguable "employment" during the altercation with Jody. Thus, we decline to assign liability to Lynn for a dispute between a brother and sister which occurred well outside the scope of employment. Therefore, this argument is without merit.
C. Negligent Maintenance of a Loaded Gun on Business Premises
¶ 26. The Otts assert that Lynn should be held liable for the negligent maintenance of a loaded firearm, which was used to injure Jody. They claim that Lynn knew that Lisa had a "short fuse," and that Lynn failed to take steps to protect Jody. To prevail on a negligence claim in Mississippi, the plaintiff must allege and prove the four basic tort elements for negligence: (1) duty, (2) breach, (3) causation, and (4) injury. Green v. Dalewood Prop. Owners Assoc., Inc., 919 So.2d 1000, 1005(¶ 10) (Miss.2005).
¶ 27. The Otts claim that Lynn breached her duty to warn Jody about the loaded firearm. However, any duty to warn disappears once the peril is in plain view and the plaintiff fully appreciates that peril. Titus, 844 So.2d at 467(¶ 33). Lisa testified that she retrieved the gun from Lynn's bedroom because she feared for her life. She and Jody had been physically fighting for several minutes and he had ripped her clothing, struck her and threw her over furniture. Jody witnessed Lisa retreat into the room and return holding the pistol by her side. A struggle ensued and Jody was shot.
¶ 28. The evidence from the record does not support a negligence claim against Lynn. Lynn was not present in the room when Jody was shot. She was in another room calling the police, and did not see Lisa enter the bedroom to get the gun. If Lisa was known to have a "short fuse," then Jody, as her brother, surely knew of her temper as well. As such, he could appreciate the peril he created for himself when he began arguing and physically fighting with her. Again, we decline to assign liability to another when the plaintiff himself created the perilous situation. Id. Further, we decline to hold a homeowner liable for maintaining a loaded firearm in order to protect him or herself from harm. Accordingly, we find this argument to be without merit.
II. WHETHER THE LOWER COURT FAILED TO APPLY THE CORRECT STANDARD OF REVIEW FOR SUMMARY JUDGMENT.
¶ 29. The circuit court granted Lynn's motion for summary judgment stating that material issues of fact do not exist in this case. The Otts argue that some minimal analysis of the issues raised is necessary to support the order for summary judgment.
*942 ¶ 30. A motion for summary judgment can only be granted if the moving party meets its burden of proof by demonstrating that there is no genuine issue of material fact and that the party is entitled to a judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The circuit court's order reads in pertinent part, "In this cause, the Court finds that material issues of fact do not exist in this cause and that the Defendant's, Donna Lynn, individually and doing business as Southern Foundations, Motions for summary judgment should be granted." The Otts claim that the court did not consider or find that Lynn was entitled to a judgment as a matter of law and that the case required more than a one-sentence conclusory finding. However, the Otts do not cite any authority to support their contention that the words "entitled to a judgment as a matter of law" must be contained in the court's order.
¶ 31. In its order denying summary judgment, the circuit court illustrated the appropriate standard for summary judgment under Rule 56 of the Mississippi Rules of Civil Procedure, that "where there are no genuine issues of material fact such that the moving party is entitled to judgment as a matter of law." Lyle v. Mladinich, 584 So.2d 397, 398 (Miss.1991). The court further articulated that the evidence would be viewed in the light most favorable to the non-moving party and the court would err on the side of denying the motion if a doubt exists as to whether there is a genuine issue of material fact. American Legion Ladnier Post Number 42 v. Ocean Springs, 562 So.2d 103, 106 (Miss.1990).
¶ 32. The last sentence in the order states only that the court found there were no genuine issues of material fact and did not include the additional language "and the party is entitled to a judgment as a matter of law." However, when reading the order as a whole, it is apparent that the court did fully consider the evidence in the light most favorable to the Otts, and that it appropriately considered whether genuine issues of material fact existed, as well as whether Lynn was entitled to a judgment as a matter of law. Therefore, we find the Otts' argument to be without merit.
III. WHETHER THE LOWER COURT ERRED IN GRANTING SUMMARY JUDGMENT WHERE THE APPELLEE'S MOTION FAILED TO COMPLY WITH THE MANDATORY REQUIREMENTS OF THE UNIFORM CIRCUIT AND COUNTY COURT RULES.
¶ 33. In their final argument, the Otts claim that Lynn failed to comply with the mandatory requirement of the Uniform Rules of Circuit and County Court Rule 4.03 which requires the movant for a summary judgment to itemize the facts alleged to be undisputed.
¶ 34. Rule 4.03 states in pertinent part that "Movants for summary judgment shall file with the clerk as a part of the motion an itemization of the facts relied upon and not genuinely disputed. . . ." The Otts provide no additional authority with which to prove that Lynn's omission of the itemization of undisputed facts should be fatal to her request for summary judgment.
¶ 35. While the summary judgment motion itself did not specifically itemize undisputed facts, we find from the record that the movant did attach relevant excerpts from the pleadings, discovery and depositions, which described undisputed facts. In addition, Lynn filed a memorandum brief to support her motion for summary judgment on the same day as the motion *943 for summary judgment was filed. In the brief, Lynn describes several facts which she claims are not in dispute, namely that Jody entered her home sometime after midnight, he became engaged in an altercation with Lisa, a fight ensured, Lisa took a pistol out of Lynn's bedroom, whereby Jody and Lisa fought over the gun, and Jody was subsequently shot. Thus, we find this argument to be without merit and affirm the lower court's grant of summary judgment.
¶ 36. THE JUDGMENT OF THE CIRCUIT COURT OF LOWNDES COUNTY GRANTING SUMMARY JUDGMENT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
KING, C.J., LEE AND MYERS, P.JJ., GRIFFIS, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR. IRVING, J., CONCURS IN RESULT ONLY.